### LEDERER v. McELROY.

(Supreme Court, Appellate Division, First Department. April 6, 1906.)

BROKERS—COMMISSIONS—ACTIONS—EVIDENCE—SUFFICIENCY.

    In an action by a broker to recover a commission for procuring a purchaser, the evidence considered, and *held* insufficient to show that defendant had placed the property with plaintiff for sale.

Appeal from Trial Term, New York County.

Action by Martin Lederer against Daniel S. McElroy. From a judgment in favor of plaintiff, and from an order denying a motion for a new trial, defendant appeals. Reversed.

Argued before O'BRIEN, P. J., and McLAUGHLIN, INGRAHAM, LAUGHLIN, and HOUGHTON, JJ.

Daniel Daly, for appellant.

Mark M. Schlesinger, for respondent.

LAUGHLIN, J. The plaintiff has recovered a commission of $5,000 on the theory that as broker for defendant he procured a purchaser for premises 1489 Broadway, and the adjacent premises Nos. 202 to 214, inclusive, West Forty-Third street, New York, at the defendant's selling price of $500,000, and that defendant then failed and refused to sign a contract for the sale thereof. The employment of plaintiff as broker at first to procure a tenant for the premises, and thereafter to sell the same, is not disputed; but the defendant contends that it was conditioned upon his ability to procure options for a lease or sale of some of the lots, as to which, he claims, it was understood that he was without authority. Messrs. Klaw & Erlanger are the purchasers claimed to have been procured. It was admitted that they were financially responsible and satisfactory. It is claimed by appellant that the minds of the parties met, and that he is not responsible for the failure to consummate the sale. It is alleged in the complaint that plaintiff, as a broker, rendered services to defendant with respect to leasing or selling said premises, for which defendant promised and agreed to pay $5,000; that defendant employed plaintiff "to find a tenant for a theater to be erected upon said plot, or a purchaser of said plot"; that plaintiff "secured such tenant or purchaser in the person of Messrs. Klaw & Erlanger," who agreed to lease or purchase the premises; that plaintiff brought the parties together, and the price of the property which defendant agreed to accept, and Messrs. Klaw & Erlanger agreed to and were ready and willing to pay and to execute a contract for, was $500,000; that defendant failed or refused to enter into a contract for the sale of the property to Messrs. Klaw & Erlanger; and that plaintiff, by thus procuring a purchaser ready, willing, and able to perform, became entitled to commissions. Plaintiff first proved that he was employed to rent the premises and a theater to be erected thereon for a period of 20 years or longer at an annual rental not to exceed $40,000, the term to commence when the theater should be completed, and that through the agency of one Lawrence, who was business manager for the Lyceum and for Daly's Theater, he sought out and procured Messrs. Klaw & Erlanger, who accepted the proposition, and were ready and willing to take a lease in accordance with those terms. According to the testimony of Lawrence, who by an arrangement with plaintiff was to receive one-half of the commissions, the defendant, after Erlanger had agreed to take a lease, suggested that Messrs. Klaw & Erlanger might desire to purchase the premises, which he said he owned and controlled. Witness also testified that, after plaintiff first came to him concerning procuring a tenant for the premises, defendant told him that "he owned and controlled these premises," and was ready to deliver a lease, and that plaintiff represented him, and could sell them for $550,000, and that thereupon plaintiff opened negotiations with them concerning a purchase. Lawrence further testified that subsequently defendant admitted to him over the telephone that "he had closed the deal," but that the contract was not yet ready, and consented, at the suggestion of Lawrence, that Erlanger retain, "out of the $25,000 which was to be paid upon signing the contract," Lawrence's share of the commissions; that defendant subsequently informed and wrote him, in answer to inquiries about the delay

in signing the contract for the sale of the premises, that difficulty was encountered concerning one option and in obtaining authority from one of the owners, who was in Europe, and he further testified that the contract was never signed. The positive testimony of Lawrence, to the effect that defendant twice represented that he owned and controlled all of the premises is naturally weakened by the fact that it does not appear that he ever so claimed in conversation or correspondence with defendant, when the latter repeatedly assigned as the reason for the delay in executing the contract difficulty with an option, or in obtaining the consent of an absent owner; but, on the contrary, as appears by his letter of July 22, 1901, to defendant, gracefully acquiesced in the delay, and accepted the obstacle as if he had been fully and truly apprised of the facts from the outset, as claimed by defendant. The letter, omitting the formal parts, is as follows:

"I am just in receipt of your letter, and note all you say. Mr. Erlanger sent for me this morning, and tells me some one else has had the property offered them, and wanted to know how matters stood. I fortunately was able to show him your letter, which reassured him. I trust you will be able to acquire the parcel you want, so that matters can be closed up in the near future."

The defendant testified that he only owned 1489 Broadway, which is 20 feet front by 60 feet in depth, and 204 West Forty-Third street, which is 20 feet front by 60 feet in depth; that plaintiff called at his office, 1489 Broadway, and inquired, in substance, if he knew of a theater plot in that neighborhood that could be leased; that he made a diagram covering his own premises, and more in the rear, which he told plaintiff he thought might be acquired, and at the same time informed plaintiff that he only owned 1489 Broadway and 204 West Forty-Third street, but that he had an understanding with the owner of 202, 206, and 208 West Forty-Third street that they were to act together in offering their property for rent or sale; that the adjoining property all the way down the street was for sale; and probably could be purchased; that he also said to plaintiff that he would undertake to get prices and options on it, and gave a selling price on his own property, and an estimate of what he thought the adjoining property would cost, and expressed the opinion that, if a lease were negotiated on the basis of the lessees constructing a theater, the rental would be about 6 per cent. on the cost of the building and the value of the land; that later plaintiff said, in substance, that he had interested Lawrence, who wanted to see the proposition in writing, and he therefore gave plaintiff a letter, saying, in substance, that he believed he could safely say that his client would erect a theater on Broadway and Forty-Third street, and lease it to Mr. Frohman for 20 to 30 years at an annual net rental of 6 per cent.; that the ground was valued at $370,000, but that they might have to purchase Nos. 210 and 212 West Forty-Third street, and therefore desired the matter kept quiet, and requested plaintiff to "get a written proposition, as that will enable me to get a formal acceptance from my client." Defendant signed another agent's name, with the latter's consent, to this letter, and explains it upon the ground of being a property owner himself, and not desiring to have it known to other property owners that he was interested in the purchase. He further testified he had previously given plaintiff a diagram of his own premises and

those along Forty-Third street to and including No. 212, and that those were the premises to which his letter related; that Lawrence introduced Erlanger, to whom defendant showed a diagram, with another lot (No. 214) added, and Erlanger said he would need more, and Nos. 216, 218, and 220 were discussed, which Erlanger said would be sufficient, and defendant undertook to look into and submit an agreement for a lease; that, on its being suggested that Erlanger might prefer to buy, defendant said he thought the selling price, according to enlarged diagram, would be $550,000; that subsequently plaintiff presented the selling proposition to Erlanger, and they met, and defendant informed him truly concerning his own title; that he thought he could control lots 202, 206, and 208, and suggested the employment of another broker to acquire the balance of the plot, which Erlanger did, and that negotiations continued for a long period, and finally failed, and the leasing proposition was revived; that they never agreed upon a sale, and he never told plaintiff or Lawrence that they did. Another real estate agent (Mr. Bailey), whose name defendant signed to the letter, and who occupied an office with him and was a distant relative, but had no interest in the matter, fully corroborated defendant as to his informing both plaintiff and Lawrence truly concerning his own title and his relationship to the other premises in question.

The plaintiff at first testified positively that defendant represented that he owned 1489 Broadway and 202, 204, 206, 208, 210, and 212 West Forty-Third street, which he thought would be a good site for a theater, but on cross-examination he modified it, and said defendant only claimed to own 1489 Broadway, and said he controlled the remainder by having options on them, and later on he says defendant claimed to own 204 West Forty-Third street also, and that defendant later on informed him that he only had options on 202, 210, and 212; that defendant employed him to sell or lease the premises; that he called on Lawrence, who said the plot was too small, and when he reported this to defendant the latter added 214 to the diagram; that after the negotiations for the lease they met Erlanger on the proposition to sell, and Erlanger inquired of defendant what he asked for the property, to which defendant replied $550,000, whereupon Erlanger offered $500,000 cash, $25,000 on execution of contract, and balance all cash above the mortgages, and defendant said to plaintiff, "Deliver the property"; that Erlanger told him to tell defendant to draw up the contract, and defendant admitted that he had "made the commission"; that defendant deferred signing the contract on account of the condition of certain options, and to await the return of an owner from Europe.

On this vital point—as to whether defendant assumed to place with plaintiff to rent or sell this entire plot, embracing many lots which he did not own or have any option upon either for leasing or selling, and some concerning which he had no relation whatsoever with the owners—the testimony of the plaintiff is most unsatisfactory. As has been seen, first, he testified that defendant stated that he owned it all, and then he testified that the defendant's representation was that he only owned No. 1489 Broadway, but that he "controlled" the rest, and his third version of the conversation is that defendant said that he owned No. 204 West Forty-Third street also, and had options on the other

lots. When questioned concerning No. 214, which he admits was added after negotiations were opened, he says defendant said "he controlled it all"; and later on he testifies that defendant's representation concerning that lot was that "he could get the option on the property next door also." The plaintiff utterly failed, until his cross-examination, to show that defendant made any representation concerning lots 216, 218, and 220 West Forty-Third street, which concededly were embraced in the selling negotiations, and then with some indefiniteness and apparent confusion he testified that defendant represented that he could get options on those lots also. Mr. Erlanger, who should be able to give important testimony, was not called.

The defendant's version of employment of the broker is not improbable. It is not incredible that plaintiff, if informed, as defendant says he was, of the true state of the title and defendant's authority, would have given perhaps an hour or a few hours to negotiations with a view to obtaining an acceptance of a proposition which he and defendant thought the latter could induce the adjoining owners to join in carrying out, and whereby he could earn a commission of $5,000 or more. Such methods of procedure would not be specially novel in the real estate brokerage circles. It is doubtful whether an intelligent and financially responsible man would unqualifiedly offer another man's premises for sale at a specific price without any authority. It is, of course, possible, but not probable, for he would thus incur personal liability. Furthermore, it appears that defendant, through plaintiff and Lawrence, endeavored to induce Messrs. Klaw & Erlanger to take a lease of the premises when options on all for a sale could not be obtained, and it does not appear that either plaintiff or Lawrence either refused or demurred on the ground that their commissions had been earned, or had made such claim prior thereto. Moreover, it does not satisfactorily appear that a sale was effected.

We are of opinion, therefore, that the plaintiff has not fairly borne the burden of proof, and that the weight of the evidence is in favor of the defendant. It follows that the judgment and order should be reversed, and a new trial granted, with costs to appellant to abide event. All concur.